**IT IS ORDERED as set forth below:**



Date: November 9, 2020

_____
Wendy L. Hagenau
U.S. Bankruptcy Court Judge

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 15-58443-WLH |
| NILHAN DEVELOPERS, LLC, | |
| | CHAPTER 11 |
| Debtor. | |

**ORDER DENYING MOTION FOR SANCTIONS**

    **THIS MATTER** is before the Court on the Amended Report Regarding Mediation and Motion Requesting Sanctions filed by Chittranjan K. Thakkar (Case No. 15-58440 Doc. No. 1222) (the "Motion") and the responses thereto. While the parties have a lengthy litigation history regarding a host of disputes, this matter is before the Court on a single issue: did Gateway violate the automatic stay and/or the Court's order authorizing mediation when it obtained a charging order against Chuck Thakkar's interest in Nilhan Developers?

1

## I. FACTS

The Debtor, together with its affiliates, Bay Circle Properties, LLC ("Bay Circle"), DCT Systems Group, LLC ("DCT"), Sugarloaf Centre, LLC ("Sugarloaf"), and NRCT, LLC ("NRCT") (collectively the "Debtors"), each filed a petition for relief under Chapter 11 of the Bankruptcy Code on May 4, 2015. On June 8, 2015, the Court administratively consolidated the Debtors' cases. The manager of each of the Debtors is Chuck Thakkar. Ownership in each debtor differs somewhat but in general in each debtor, ownership is held by some combination of Mr. Thakkar, his children Rohan and Niloy, his wife, or a company which some combination of Thakkars owns. There is no dispute that this particular Debtor is owned by Rohan and Niloy Thakkar.

Three years into the cases, after notice and a hearing, the Court appointed a Chapter 11 Trustee in all five cases on December 11, 2018 (Case No. 15-58440 Doc. No. 919). The appointment was triggered by Mr. Thakkar's actions in this case where, without notifying the Court or his counsel and without Court approval, Mr. Thakkar exercised an option to re-acquire property for over $9 million and incurred debt in that amount, including over $5 million of unauthorized post-petition financing from an insider. The Court appointed Ronald L. Glass as Chapter 11 Trustee (the "Trustee") for all the Debtors (Case No. 15-58440 Doc. No. 922), and he has continued to serve as Trustee since.

Behind the scenes, these bankruptcy cases have been impacted and driven to a certain extent by litigation between Mr. Thakkar and his family, on the one hand, and Good Gateway, LLC and SEG Gateway, LLC (collectively "Gateway"), on the other. Pre-petition, Gateway obtained judgments of $2.5 and $12 million in a Florida state court against several defendants including Mr. Thakkar and other non-Debtor entities. Due to subsequent litigation and efforts to collect on its judgment, Gateway claims multiple interests, including an interest in NRCT and in

2

another entity that also claims an ownership interest in Sugarloaf, a 50% interest in the recovery due to one of the Debtor's creditors (Nilhan Financial), and an adequate protection claim in the Bay Circle case.

Gateway filed claims in the cases, all of which were disallowed except the claim in Bay Circle. Gateway also filed a Motion for Relief from Stay (Case No. 15-58440 Doc. No. 307) early in the cases seeking to continue litigation in the Florida courts, which the Court also denied (Case No. 15-58440 Doc. No. 380). The parties are determined to litigate, as evidenced by the numerous cases filed here, in Florida, and elsewhere. In fact, Mr. Thakkar has testified that he will continue to litigate with Gateway forever (see Transcript of Hearing on December 4, 2020, Case No. 15-58440 Doc. No. 936 at 147 line 12 (Mr. Thakkar stated he intended to appeal "till I die.")).

Gateway has also continued its collection efforts outside of bankruptcy. On February 2, 2019, Gateway moved in the Florida state court for charging orders against Chuck Thakkar's interests in various limited liability companies (individually an "LLC"), including Nilhan Developers. On May 14, 2019, counsel for Gateway, Walter E. Jones, communicated with counsel for the Trustee by telephone and email regarding Gateway's efforts to obtain charging orders, at which point counsel for the Trustee stated she did not think it was appropriate for the Trustee to consent to lifting the automatic stay. On July 22, 2019, Gateway filed a notice of hearing on the motion for charging orders in the Florida state court for September 18, 2019. The notice of hearing was not served on the Trustee.

In the meantime, on August 30, 2019, the Trustee filed a Motion for Order Directing Mediation (Case No. 15-58440 Doc. No. 1193, amened at Doc. No. 1194), which was amended the next day. In the motion, the Trustee asked that all disputes, claims, and interests in the bankruptcy cases be mediated including "Gateway's claims against any of the equity interests in

3

Debtors, including its alleged equity interest in Sugarloaf, its request for charging orders on equity interests held in the Debtors and the treatment of any such interests." No one objected, and the Court entered an order on September 6, 2019 authorizing and directing mediation and appointing retired Bankruptcy Judge Mary Grace Diehl as mediator (Case No. 15-58440 Doc. No. 1201) (the "Mediation Order"). The Mediation Order provided "all pending motions filed by any of the foregoing and Adversary Proceeding No. 19-5284 are stayed pending further order of the Court." The Mediation Order was served by mail on Mr. Jones and through the Court's CM/ECF system on Gateway's Florida state court counsel Clay Townsend.

The Florida state court held a hearing on the motion for charging order on September 18, 2019, at which Mr. Thakkar's attorney, Stephen Breuer, informed the judge of the automatic stay and the Court's order directing mediation. Mr. Townsend, appearing for Gateway, stated neither the stay nor the mediation order acted as an impediment to the court entering a charging order and expressly stated he had consulted with the Trustee. The Florida state court granted Gateway's motion, and a charging order was entered against the interest of Mr. Thakkar, individually, in Nilhan Developers, LLC in favor of and for the benefit of Good Gateway LLC on September 18, 2019 (the "Charging Order"). The Charging Order also ordered the Debtor to file a sworn answer reporting all amounts distributable or payable to Mr. Thakkar within thirty days. The Charging Order was served on the Debtor through its registered agent, Mr. Thakkar; it was not served on the Trustee. After the motions described below were filed and the Trustee expressed concern, Mr. Townsend asked that the Charging Order be vacated, which occurred on September 25, 2019.

On September 23, 2020, Mr. Thakkar filed a Report Regarding Mediation and Actions Taken by Good Gateway, LLC and Request for Status Conference (Case No. 15-58440 Doc. No. 1218) and a Motion Requesting Expedited Scheduling of Status Conference (Case No. 15-58440

4

Doc. No. 1219).  The Court denied the request for a status conference (Case No. 15-58440 Doc. No. 1220).  Mr. Thakkar then filed the Motion in which he provided an amended report regarding mediation and moved for sanctions against Gateway; he also requested a hearing on the Motion on an expedited basis (Case No. 15-58440 Doc. No. 1223).  Gateway responded on October 27, 2019 (Case No. 15-58440 Doc. No. 1225).  The Court denied Mr. Thakkar's requests because the disputes raised in the Motion and Gateway's response were matters the parties could consider in connection with the mediation (Case No. 15-58440 Doc. No. 1227).  The Court observed the parties could later seek relief if mediation was unsuccessful.

The Trustee, Mr. Thakkar, Gateway's representative and its counsel, among others, attended the mediation on October 24 and 25, 2019, which then continued telephonically for several days thereafter.  The mediation ultimately concluded with no agreement, and the Debtor's bankruptcy case has continued to move forward towards a final disposition (a hearing to consider confirmation of the plan is scheduled for November 12, 2020).

The Court held an evidentiary hearing on the Motion on October 27, 2020, at which Mr. Townsend testified.  Mr. Thakkar contends Gateway violated the automatic stay and the stay contained in the Mediation Order when it obtained the Charging Order against him, and he seeks sanctions against Gateway, though the exact nature and amount of sanctions he seeks were not specified in the Motions.  At the hearing on October 27, 2020, Mr. Thakkar's counsel argued that he and the Trustee should be entitled to recover their attorney's fees incurred in having to respond to the Charging Order, though no evidence was presented as to damages.  Gateway argues, first, it did not violate the automatic stay because the Charging Order was entered against Mr. Thakkar's personal interest in the Debtor and it did not affect the Debtor's estate and, second, the Mediation Order did not affect Gateway's dispute with Mr. Thakkar.  Having considered the record, the

5

evidence presented, and the argument of the parties, the Court denies the Motion for the reasons stated orally at the conclusion of the hearing and those stated herein.

## II. ANALYSIS

### A. The Automatic Stay

The automatic stay is one of the most important provisions of the Bankruptcy Code and is designed to afford debtors "breathing space" to reorder their affairs, make peace with their creditors, and enjoy a clear field for future effort. See NLRB v. Bildisco & Bildisco, 465 U.S. 513 (1984). The Bankruptcy Code provides that a creditor must stay all proceedings against a debtor and its property after the debtor files a petition for bankruptcy. 11 U.S.C. § 362(a)(1). For example, section 362(a)(1) operates as a stay of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . or to recover a claim against the debtor . . . ." The "stay of acts 'against the debtor' is to be strictly construed." In re Kay Bee Kay Props., LLC, 618 B.R. 486, 491 (Bankr. E.D. Mich. 2020).

If a creditor willfully violates the automatic stay, the Bankruptcy Code establishes a mechanism both to provide compensation for the offense and to punish the offender. Section 362(k) of the Bankruptcy Code provides:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1).

In addition to granting relief pursuant to section 362(k), a court may consider discretionary relief for violations of the stay under section 105(a). In re Allied Holdings, Inc., 355 B.R. 372 (Bankr. N.D. Ga. 2006). Section 105 creates a statutory contempt power in bankruptcy proceedings, distinct from the court's inherent contempt powers, that grants courts independent

statutory powers to award monetary and other forms of relief for automatic stay violations to the extent such awards are "necessary or appropriate" to carry out the provisions of the Bankruptcy Code. Id. at 1554. The award of damages, including attorney's fees, under section 105(a) is discretionary. Id. at 1559; see also Johnston Env't. Corp. v. Knight (In re Goodman), 991 F.2d 613, 620 (9th Cir. 1993) (explaining that while section 362(k) provides for mandatory damages (pursuant to section 362(k), an individual injured "shall" recover damages), damages under section 105(a) are permissive). Additionally, while section 362(k) provides for punitive damages, section 105(a) provides no authority for the imposition of punitive damages for violations of the automatic stay. Jove Eng'g, Inc. v. IRS, 92 F.3d 1539, 1559 (11th Cir. 1996).

      1. Standing

A party asserting a claim for a violation of the automatic stay must have standing. Chen v. Siemens Energy, Inc., 467 F. App'x 852, 853 (11th Cir. 2012) (standing "is a jurisdictional prerequisite to suit in federal court."). "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975). Article III of the Constitution requires that Plaintiff demonstrate a "case or controversy." See Mass. v. E.P.A., 549 U.S. 497 (2007). Courts have interpreted this to require: (1) the party asserting standing has suffered actual injury or been threatened with injury, (2) the injury is traceable to the objectionable conduct, and (3) the relief requested is likely to redress the injury. See E.F. Hutton & Co., Inc. v. Hadley, 901 F.2d 979, 984 (11th Cir. 1990)). To have prudential standing, a party must show its claim falls within the zone of interests protected by section 362. See Montesa v. Schwartz, 836 F.3d 176, 195 (2d Cir. 2016) (citing Valley Forge Christian College v. Americans United for Separation of Church and State,

Inc., 454 U.S. 464, 474-75 (1982)) (explaining that prudential standing encompasses the rule against the adjudication of generalized grievances, the rule prohibiting plaintiffs from asserting the rights of third parties, and the rule barring claims that fall outside "the zone of interests to be protected or regulated by the statute."); In re Peeples, 880 F.3d 1207, 1215 (10th Cir. 2018) ("The very point of the zone-of-interests doctrine is that not every injury traceable to the violation of a federal statute is remediable in the federal courts").

Some courts have held creditors, and not just debtors, have standing to seek damages under section 362(k).  See e.g., St. Paul Fire & Marine Ins. Co. v. Labuzan, 579 F.3d 533 (5th Cir. 2009). While the automatic stay can apply to non-debtors, it "does so only when a claim against the non-debtor will have an immediate and adverse economic consequence for the debtor's estate." Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287 (2d Cir. 2003); see also Boucher v. Shaw, 572 F.3d 1087, 1092 (9th Cir. 2009) ("As a general rule, the automatic stay protects *only* the debtor, property of the debtor or property of the estate. . . . The stay 'does not protect non-debtor parties or their property.'") (alteration in original) (citations omitted).  Further, a creditor must assert a claim for its own direct injury and not a claim that belongs to the estate.  "If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim." Ampal-Am. Isr. Corp., 502 B.R. 361, 371 (Bankr. S.D.N.Y. 2013).

Owners and equity holders, conversely, do not have standing to bring claims for alleged stay violations.  Non-debtor, non-creditor, third parties are not within the zone of interests the automatic stay was intended to protect and, therefore, lack prudential standing to pursue stay violations.  See Taylor v. Conn. (In re Taylor), 2018 WL 1413538, at *5 (Bankr. D. Conn. Mar. 20, 2018), reconsideration granted in part, 2019 WL 4281896 (Bankr. D. Conn. Sept. 10, 2019).

For example, in St. Paul Fire & Marine Ins. Co., the Fifth Circuit Court of Appeals concluded principals of the debtor had standing under section 362(k) to pursue damages for alleged violations of the automatic stay in their capacity as pre-petition creditors of the debtor, but they could not invoke section 362(k) to the extent their claims were based on their status as owners/equity holders of the debtor.  See 579 F.3d at 545.  Similarly, the bankruptcy court in Metro. Life Ins. Co. v. Alside Supply Ctr. of Knoxville (In re Clemmer), 178 B.R. 160, 167 (Bankr. E.D. Tenn. 1995), declined to extend the definition of "individual" to include all parties who may have some tangential interest in a debtor's bankruptcy case, and held a third-party garnishee, and potential judgment debtor, did not have standing to challenge violations of the automatic stay.

Mr. Thakkar does not fall within the aggrieved parties that may seek relief under section 362(k) and does not have prudential standing to assert a claim for stay violations under section 105(a).  Mr. Thakkar is not the Debtor.  He is not a creditor.  He is not even an equity owner of the Debtor.  At the time he filed the Motions, Mr. Thakkar was no longer the manager of the Debtor as that responsibility had passed to the Trustee.  His alleged grievance, that he incurred fees as a result of the Charging Order, does not fall within the zone of interests the automatic stay is designed to protect, namely the preservation of estate assets.  Additionally, to the extent the estate would have a claim for a violation of the automatic stay, it would belong to the Trustee as the fiduciary tasked with administering and collecting the assets of the bankruptcy estate, not with Mr. Thakkar.  Accordingly, Mr. Thakkar lacks standing to assert a claim for damages related to Gateway's alleged violation of the automatic stay.

2. The Charging Order Did Not Violate the Automatic Stay

Even if Mr. Thakkar had standing to assert such a claim, the claim would fail. Gateway did not violate the automatic stay because the law is clear that obtaining a charging order against a non-debtor, equity holder's interest in an LLC is not a stay violation.

Fla. Stat. § 605.0503(1) provides a judgment creditor may obtain a charging order against a member's interest in an LLC. "[A] membership interest in a [LLC] is intangible personal property, which accompanies the person of the owner." Wells Fargo Bank, N.A. v. Barber, 85 F. Supp. 3d 1308 (M.D. Fla. 2015). Once a charging order is entered, the LLC continues business as usual, except distributions due to the members are diverted to the judgment creditor. Merrill Ranch Properties, LLC v. Austell, 336 Ga. App. 722, 730 (2016). A charging order does not give a direct remedy against company property and company assets, and it "does not create a debtor-creditor relationship between the judgment creditor who obtained the charging order and the LLC whose member's interests are being charged." Id.

As explained above, the automatic stay of acts "against the debtor" is to be strictly construed. Actions as to the personal membership rights of LLC members are not actions against the LLC. Thus, actions against LLC members, in their individual capacity, do not violate the automatic stay. For example, in In re Resource Energy Techs. LLC, 419 B.R. 746, 748 (Bankr. W.D. Ky. 2009), the court found discovery requests issued to members of an LLC who had access to company documents in their capacity as individual members of the LLC did not violate the automatic stay. Similarly, proceedings against guarantors and co-obligors are not stayed. In re Williams, 851 F.2d 119, 121–22 (4th Cir.1988); Lynch v. Johns–Manville Sales Corp., 710 F.2d 1194 (6th Cir.1983) ("It is universally acknowledged that the automatic stay ... may not be invoked by entities such as sureties, guarantors, co-obligors or others with a similar legal or factual nexus

10

to the . . . debtor."). Likewise, actions against a garnishee on account of its independent liability, Sw. Airlines Co. v. Tidewater Fin. Co. (In re Cole), 552 B.R. 903 (Bankr. N.D. Ga. 2016), and proceedings to enforce an attorney's lien against a bankruptcy creditor are not stayed. See Kay Bee Kay Props., LLC, 618 B.R. at 491.

Courts recognize an exception to the general rule, however, when there are unusual circumstances that warrant extending the stay to a non-debtor third party. Unusual circumstances may arise where there is such identity between the debtor and the third party defendant that the debtor may be said to be the real party defendant and a judgment or finding against the third party defendant will, in effect, be a judgment or a finding against the debtor. See Chase Manhattan Bank v. Third Eighty-Ninth Assocs., 138 B.R. 144, 147 (S.D.N.Y. 1992).

Mr. Thakkar is not the Debtor in this case, and section 362 does not stay actions against him personally. A charging order against his interest, to the extent Mr. Thakkar had one in the Debtor, merely encumbered his personal interest in the LLC. It did not affect property of the estate. Moreover, there are no unusual circumstances to warrant invoking the statutory protection of section 362 here. The Court acknowledges the Charging Order did state the Debtor was required to respond to the Charging Order with a report of all amounts distributable or payable to Mr. Thakkar within thirty days. However, the Court finds this language did not violate the stay because it did not carry any repercussion or create potential liability for the Debtor if it failed to file a report as directed; it merely anticipated a reporting.

While the Court concludes the Charging Order did not technically violate the automatic stay, Gateway's conduct and efforts to obtain a charging order on the eve of mediation was not in good form. For example, Gateway knew the Trustee had been appointed and was managing the estate. In fact, Gateway's counsel had several conversations with the Trustee's attorneys about

11

resolving several issues in the case. So it is disingenuous for Gateway to contend it did not know it should have served the Trustee or otherwise involved him on behalf of Nilhan Developers. While requiring the Debtor to file a response was also not *technically* violative of the stay, it seems a bit like a trap for an unwary debtor, particularly when Gateway did not notify the Trustee about the September 18 hearing, the Charging Order, or the requirement to respond. Similarly, Mr. Townsend's response to the Florida state court regarding communications with the Trustee were not complete and perhaps gave the Florida judge the false impression the Trustee had no opposition to the Charging Order. Gateway also had no basis to allege Mr. Thakkar even had an interest in the Debtor, since everything filed in the bankruptcy court stated Rohan and Niloy owned the Debtor, not Mr. Thakkar. For all these reasons, the Court concludes Gateway's conduct in obtaining the Charging Order did not violate the automatic stay but was nevertheless bad form.[1]

B.  The Charging Order Did Not Violate the Stay in the Mediation Order

Mr. Thakkar also seeks to hold Gateway in contempt for violating the Mediation Order. Civil contempt occurs when there is a violation of a specific and definite court order with regard to which a party has knowledge. In re Sun Island Realty, 177 B.R. 391 (S.D. Fla. 1994). Bankruptcy Courts have civil contempt power to enforce their own orders pursuant to section 105(a). Hardy v. U.S. (In re Hardy), 97 F.3d 1384, 1389 (11th Cir. 1996). A bankruptcy court also has "the inherent power to enforce obedience of their lawful orders issued in connection with the proceeding over which such court had subject matter jurisdiction." In re Lemco Gypsum, Inc., 95 B.R. 860, 863 (Bankr. S.D. Ga. 1989) (determining that "the inherent civil contempt power to

---

[1] At the hearing, Mr. Thakkar's counsel attempted to offer impeachment evidence. The Court determined it was not relevant since it would not change its analysis. As explained herein, the Court finds: 1) Gateway did not violate the automatic stay for technical legal reasons because the automatic stay did not apply to actions against Mr. Thakkar, and 2) Gateway did not violate the Mediation Order because it was not definite and specific enough to prevent litigation against third parties in state court. Further dissection of Gateway's motivations and of Mr. Townsend's character would not impact these determinations. Accordingly, the Court declined to consider the impeachment evidence.

12

enforce compliance with lawful judicial orders is well-recognized, as judicial power to issue an order carries with it the power to enforce such orders."); Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) ("[I]t is firmly established that the power to punish for contempt is inherent in all courts."). Civil contempt sanctions are used to coerce compliance with a court order and compensate an injured party for losses suffered by reason of the contemptuous behavior. Faust v. Texaco (In re Faust), 270 B.R. 310, 316 (Bankr. M.D. Ga. 1998) (citing Jove Eng'g, 92 F.3d at 1557-1558). To establish civil contempt of an order, the moving party must show by clear and convincing evidence the contemnors violated a specific and definite order of the court. Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002); see also Jove Eng'g, 92 F.3d at 1546 (order must be "clear, definite and unambiguous").

The Court finds Mr. Thakkar has not shown by clear and convincing evidence that Gateway violated a specific and definite order of the Court. The Mediation Order provided "all pending motions filed by any of the foregoing and Adversary Proceeding No. 19-5284 are stayed pending further order of the Court." The Mediation Order was not limited to matters in the bankruptcy case, though it did not, and could not, stay matters in another court. The Mediation Order did not clearly, definitely, and unambiguously bar Gateway from continuing collections efforts against non-debtors.

While the Court declines to hold Gateway in contempt for violating the Mediation Order, the Court observes Gateway's actions violated the spirit of the Mediation Order. The Mediation Order was served on Gateways' counsel by mail and electronic means, so counsel was surely aware that it had been entered and that the parties were focused on resolution of issues including, specifically, the matter of charging orders. While Gateway argues the Charging Order was essentially worthless, its actions throughout these bankruptcy cases demonstrate the opposite to be

13

true—the charging orders have repeatedly come up and have, in a large extent, driven Gateway's actions in these cases. It appears that Gateway's continued efforts to obtain a charging order after the Mediation Order was entered were part of its continued litigation strategy to gain leverage on the eve of the scheduled mediation. That particularly seems true since Gateway had no reason to think Mr. Thakkar owned an interest in the Debtor. Whether intentional or not, Gateway was not paying attention to the sequence of events and important details.

The Court concludes Gateway's actions did not technically violate the Mediation Order, but that does not make its actions right. It was wrong for Gateway to proceed against Mr. Thakkar's perceived interest in the Debtor while knowing he did not have an ownership interest in the Debtor; it was wrong to not include the Trustee in communications and notices about charging orders while aware the Trustee was the representative of the estate; and it was wrong to go forward and prosecute the motion for charging order on the eve of mediation.

### III. CONCLUSION

Accordingly, for the reasons stated above,

**IT IS ORDERED** that the Motion is **DENIED**.

**END OF ORDER**

**Distribution List**

Lisa Wolgast
Frank W. DeBorde
Morris, Manning & Martin, LLP
3343 Peachtree Rd., N.E., Suite 1600
Atlanta, Georgia 30326

M. Denise Dotson
M. Denise Dotson, LLC
PO Box 767
Avondale Estates, GA 30002

Walter E. Jones
Balch & Bingham LLP
30 Ivan Allen Jr. Boulevard, N.W., Suite 700
Atlanta, GA 30308

Clay M. Townsend
Morgan & Morgan, P.A.
20 North Orange Avenue, Suite 1500
Orlando, FL 32801

Paul Reece Marr
Paul Reece Marr, P.C.
Suite 960
300 Galleria Parkway, N.W.
Atlanta, GA 30339

Henry F. Sewell, Jr., Esq.
Law Offices of Henry F. Sewell, Jr. LLC
2964 Peachtree Road, NW
Suite 555
Atlanta, Georgia 30305

David Weidenbaum
Office of the U.S. Trustee
Room 362
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

Chittranjan (Chuck) Thakkar
6050 Peachtree Industrial Boulevard
Norcross, GA 30071

Chittranjan (Chuck) Thakkar
17885 Collins Ave
#4001
Sunny Isles, FL 33160

Ronald L. Glass
Glass Ratner Advisory & Capital Group
Suite 110
3391 Peachtree Road
Atlanta, GA 30326

John Alan Moffa
Moffa & Breuer, PLLC
Suite 204
3081 East Commercial Blvd.
Fort Lauderdale, FL 33308