

**IT IS ORDERED as set forth below:**

**Date: February 4, 2021**

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:

NILHAN DEVELOPERS, LLC,

      Debtor.

CASE NO. 15-58443-WLH

CHAPTER 11

## ORDER ON FINAL APPLICATION FOR COMPENSATION FILED BY
## MORRIS, MANNING & MARTIN, LLP

     **THIS MATTER** is before the Court on the Sixth and Final Application for Compensation

and Supplement to Final Fee Application (Case No. 15-58443 Doc. No. 233) (the "Application")

filed by Morris, Manning & Martin, LLP, pursuant to which it seeks final approval of all fees paid

to it under the First through Fifth Applications in the amount of $390,622.28, together with an

additional $84,108.16 for fees withheld in the Fifth Application and fees sought in the Sixth and

1

Final Application, for a total of $474,730.44.[1]  On January 29, 2021, MMM filed a Supplemental Response in Support of its Sixth and Final Fee Application (Case No. 15-58443 Doc. No. 250) ("Supplemental Response").

## I.    FACTS

Nilhan Developers, LLC ("ND"), together with its affiliates, Bay Circle Properties, LLC ("Bay Circle"), DCT Systems Group, LLC ("DCT"), Sugarloaf Centre, LLC ("Sugarloaf"), and NRCT, LLC ("NRCT") (collectively the "Debtors"), each filed a petition for relief under Chapter 11 of the Bankruptcy Code on May 4, 2015.  On June 8, 2015, the Court administratively consolidated the Debtors' cases.  The manager of each of the Debtors is Chuck Thakkar.  Ownership in each debtor differs somewhat but, in general in each debtor, ownership is held by some combination of Mr. Thakkar, his children Rohan and Niloy, his wife, and/or a company which some combination of the Thakkar family owns.

The immediate reason for filing bankruptcy was a default by the Debtors on a series of loan agreements with Wells Fargo Bank, N.A.[2]  Eleven days into the case, Wells Fargo filed a Motion for the Appointment of a Chapter 11 Trustee (Case No. 15-58440 Doc. No. 12).  After an evidentiary hearing, the Court denied the request and appointed an examiner instead (Case No. 15-58440 Doc. No. 134).  The examiner served until November 30, 2016 and prepared several reports regarding the Debtors, their cash management systems, and intercompany debts (Case No. 15-58440 Docs. Nos. 157, 274, 304, and 414).

The obligations to Wells Fargo were secured by certain real property owned by the Debtors including real property owned by ND at 2800 and 2810 Spring Road, Smyrna, Georgia

---

[1] The Court entered an order on similar issues on MMM's Final Application for Compensation in the Sugarloaf case (Case No. 15-58442 Doc. No. 201).

[2] Wells Fargo Bank, N.A. began its association with the Debtors in 2008.  The history is set out in several prior orders issued by the Court, including the Order Denying Substantive Consolidation (Case No. 15-58440 Doc. No. 797).

(collectively the "Property") located in the general vicinity of the park where the Atlanta Braves play. The first several months of these cases were devoted to the Debtors liquidating or refinancing various pieces of property to meet milestone payment deadlines agreed to by Wells Fargo. As one of the milestones approached, ND sought to sell the Property to Westplan Investors Acquisitions, LLC ("Westplan") and to remit the net sale proceeds to Bay Point (Case No. 15-58440 Doc. No. 634). The sale contract provided ND the right to buyback all or a portion of the Property upon the occurrence of certain conditions. The Court authorized the sale of the Property to Westplan (Case No. 15-58440 Doc. No. 679), which assigned the right to purchase the Property to Accent Cumberland Apartments, LP ("Accent") and the sale closed.

Behind the scenes, these bankruptcy cases have been impacted and driven to a certain extent by litigation between Mr. Thakkar and his family, on the one hand, and Good Gateway, LLC and SEG Gateway, LLC (collectively "Gateway"), on the other. Gateway obtained judgments in the amounts of $2.5 million and $12 million against Mr. Thakkar and other non-debtor entities in a Florida state court. Due to subsequent litigation, Gateway claims multiple interests in the Debtors' cases, including 50% of any recovery by Nilhan Financial, LLC ("Nilhan Financial"), a creditor of the Debtors.

Gateway filed claims in the cases, all of which were disallowed except the claim in Bay Circle. Gateway also filed a Motion for Relief from Stay (Case No. 15-58440 Doc. No. 307) early in the cases seeking to continue litigation in the Florida courts, which the Court denied (Case No. 15-58440 Doc. No. 380). The parties remain determined to litigate though, as evidenced by the numerous cases filed in this Court, Florida, and elsewhere. In fact, Mr. Thakkar has testified that he will continue to litigate with Gateway forever (see Transcript of Hearing on December 4, 2020, Case No. 15-58440 Doc. No. 936 at 147 line 12 (Mr. Thakkar stated he intended to appeal "till I

die.")).  In these bankruptcy cases, there have been seven adversary proceedings and more appeals, although not all are directly related to Gateway.  Gateway has also continued its collection efforts outside of bankruptcy, as detailed in the Court's Order Denying Motion for Sanctions, entered on November 9, 2020 (Case No. 15-58443 Doc. No. 206).

On December 11, 2018, after notice and a hearing, the Court appointed a Chapter 11 Trustee in all five cases (Case No. 15-58440 Doc. No. 919).  The appointment was triggered by Mr. Thakkar's actions, in this case described in detail below.  In short, without notifying the Court or his counsel and without Court approval, Mr. Thakkar, on behalf of ND, exercised the option to re-acquire the Property for over $9 million and incurred unauthorized secured post-petition financing in that amount from an insider (for over $5 million) and a third party.  The Court appointed Ronald L. Glass as Chapter 11 Trustee for all the Debtors (Case No. 15-58440 Doc. No. 922).  Mr. Thakkar sought reconsideration of the order appointing a trustee (Case No. 15-58440 Doc. No. 947), which the Court considered at a hearing on February 7, 2019 and denied (Case No. 15-58440 Doc. No. 1248).

The Trustee sought to retain Morris Manning and Martin, LLP ("MMM") as his counsel. Mr. Thakkar objected to the retention of MMM, and MMM filed a brief in support of the Trustee's application.  The Court considered the Application to Retain MMM at a hearing on January 17, 2019, at which Mr. Thakkar voiced opposition to MMM's retention since MMM had potentially represented entities with interests adverse to Mr. Thakkar personally or other non-debtor entities. The Court instructed Mr. Thakkar to provide MMM with a list of parties against which the firm should check for conflicts.  Mr. Thakkar failed to provide a list of entities as instructed, so MMM researched other Thakkar entities, ran a conflicts check on over 100 entities, and filed a supplemental brief and affidavit in support of its retention (Case No. 15-58440 Docs. Nos. 970 &

4

971).   The Court held a continued hearing on February 7, 2019, after which the Court approved the retention of MMM (Case No. 15-58440 Doc. No. 976).

At the initial status conference with the Trustee on December 18, 2018, the Court requested the Trustee address several issues including: determining how to proceed with the Property and the claims of the purported post-petition lenders, resolving pending litigation, and bringing these cases to a final disposition.  The Trustee reviewed the assets and liabilities of each debtor and filed a Status Report on February 26, 2019 with his initial findings and questions (Case No. 15-58440 Doc. No. 983).  After a failed attempt at mediating a global settlement of all issues, including those involving Gateway, the Trustee moved forward in each case to bring matters to a posture to be decided by the Court.  At that point, the cases were all taking different paths to resolution and the cases were severed on May 5, 2020 (Case No. 15-58440 Doc. No. 1420).

A.    Facts Regarding ND

ND's schedules reflect it owned the Property, also known as Emerson Center, which consisted of a shopping center and office suites.  The Property was collateral for the Wells Fargo obligations.  Wells Fargo, the Debtors, and other non-debtor entities including Chuck, Niloy, and Rohan Thakkar executed a Settlement Agreement on November 18, 2015 in which Wells Fargo agreed to forbear from enforcing obligations and performance owed by ND and other loan parties (the "Settlement Agreement").  The Settlement Agreement was amended on January 8, 2016 and approved by the Court on January 13, 2016 (Case No. 15-58440 Doc. No. 302).  The Settlement Agreement required the full amount of the debt to Wells Fargo to be paid by April 30, 2017 and set various deadlines for interim payments and release prices for the collateral.  The release price for the Property was $5.2 million.  If Wells Fargo was not paid in full by April 30, 2017, it could record deeds-in-lieu of foreclosure on the Property and property of the other obligors without

5

further hearing.   After the Settlement Agreement was finalized and approved, Wells Fargo assigned its interest and claim to Bay Point Capital Partners, L.P. ("Bay Point").

In April 2017, as the deadline to pay Wells Fargo neared, ND sought to sell the Property to Westplan or its assignee for $7 million free and clear of all liens, claims and encumbrances, and to remit the net sale proceeds to Bay Point (Case No. 15-58440 Doc. No. 634).  ND and Westplan had been in discussions going back to 2015 over joint development of the Property.  The proposal contemplated that ND would have the right to develop the retail, office and hotel portion of the Property under certain circumstances while Westplan would develop the residential portion of the Property.  Paragraph 26 of the contract provided ND the right to buyback all or a portion of the Property upon the occurrence of certain conditions, such as the failure of the City of Smyrna to rezone the Property to allow for the planned development.  Bay Point and Gateway objected to the sale.  Bay Point submitted a credit bid for the Property.  At the Court's direction, the parties conducted an auction, which resulted in an offer from Westplan of $7.2 million otherwise in accordance with the proposed contract and from Bay Point of $7.3 million otherwise in accordance with the proposed Westplan contract, but without the repurchase option for the Property.

The Court held an evidentiary hearing on the motion to sell at which Mr. Thakkar testified to his desire for ND to retain the right to repurchase the property.  The Court found that the buy-back option could have significant value if the Property was rezoned to accommodate residential and hotel use.  The Court noted the option was clearly important to Mr. Thakkar, and ordered Mr. Thakkar, or a non-debtor party on his behalf, to contribute $100,000 at the closing such that the total proceeds paid to Bay Point would be $7,300,000, the amount of its credit bid.  The Court authorized the sale of the Property to Westplan (Case No. 15-58440 Doc. No. 679).

Westplan assigned the right to purchase the Property to Accent. The sale closed and Accent applied for rezoning, but the rezoning request was denied. In a letter dated May 22, 2018, Accent notified ND it had through August 20, 2018 to exercise the option to repurchase the Property for the price of $9,269,212.32 calculated in accordance with the contract. ND did not have sufficient funds to repurchase the Property at that time. ND's Monthly Operating Reports show it had an ending cash balance for the month of May 2018 of just $25,742.58 and an ending cash balance in June and July 2018 of $24,983.58.

Without notifying or consulting with ND's bankruptcy counsel, ND sought financing to exercise the repurchase option. Mr. Thakkar, as manager of ND, attempted to obtain financing from various lenders, but was unable to do so. ND ultimately succeeded in obtaining a loan from Rass Associates, LLC ("Rass") and executed a promissory note in the principal amount of $4,100,000 on August 20, 2018. The note provided for interest at 15% and a maturity date of December 18, 2018, only four months later. ND also executed a deed to secure debt in favor of Rass on the Property that was recorded in the Cobb County, Georgia property records on August 20, 2018.

ND was still short of funds. Mr. Thakkar turned to Norcross Hospitality, a company of which he was manager and his children Niloy and Rohan are the majority owners. He arranged for Norcross Hospitality to borrow $4,500,000 from Metro City Bank and then loan that money plus an additional $616,212.32 to ND. On August 20, 2018, ND executed a promissory note to Norcross Hospitality in the principal amount of $5,169,212.32. The Norcross Hospitality note provided for interest at 12 percent and a maturity date of December 18, 2018. ND executed a deed to secure debt in favor of Norcross Hospitality, but the deed was never recorded. On August 20,

2018, ND used the funds it obtained from Rass and Norcross Hospitality to repurchase the Property from Accent for $9,269,212.32.

ND never informed its counsel or the Court of its intent to borrow funds and exercise the option, nor sought nor obtained approval from the Court, to incur the post-petition financing from Rass or Norcross Hospitality or to purchase the Property.  The Court learned the Property had been repurchased by ND while reviewing Westplan's Motion to Dismiss a complaint filed by ND against Westplan and Accent alleging breach of contract.  The Court issued an Order to Show Cause (Case No. 15-58440 Doc. No. 894) on October 10, 2018 directing ND and its counsel to appear and explain to the Court the circumstances of the alleged repurchase.  ND, through counsel, filed a response on October 25, 2018 stating that the Property had no equity and in order for any value to be realized, zoning and development must occur.  ND contended that such could not occur in a bankruptcy case and proposed that the Property simply be transferred to Norcross Hospitality. Alternatively, ND requested that the post-petition financing be approved (Case No. 15-58440 Doc. No. 898).  On November 11, 2018, ND filed a Motion Requesting Entry of Order (1) Transferring or Assigning Real Property and Authorizing Assumption of Debt Obligations, or Alternatively, (2) Authorizing Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code Nunc Pro Tunc (Case No. 15-58440 Doc. No. 904).  The Court did not immediately hear the motion; instead, after notice and a hearing, it appointed a Chapter 11 Trustee (Case No. 15-58440 Doc. No. 919).

B.    Second Sale of the Property

The Chapter 11 Trustee sought to sell the Property ("Second Sale").  The Trustee engaged CBRE, Inc. as real estate broker to market the Property, and CBRE received a dozen offers from third parties interested in purchasing the Property.  The Trustee determined the offer from

Habersham Partners, LLC ("Habersham") was the highest and best offer and executed an agreement for purchase and sale of the Property to Habersham. The Trustee then sought approval of bid procedures and of Habersham as the stalking horse (Case No. 15-58440 Doc. No. 1106). The Trustee filed declarations in support of the bid procedures, and an amended motion (Case No. 15-58440 Doc. No. 1127) clarifying that he proposed to sell the Property free and clear of any liens, claims, encumbrances and/or interests including those purportedly held by Norcross Hospitality. Niloy and Rohan Thakkar objected to the motion to sell and sought dismissal of the case for cause (Case No. 15-58440 Doc. No. 1123). The Court held a hearing on July 2, 2019, at which it considered testimony from the Trustee and from John Haynes of CBRE. On July 3, 2019, the Court approved the bid procedures and Habersham as the stalking horse bidder (Case No. 15-58440 Doc. No. 1128).

The order approving bid procedures also provided Rass could submit a bid for the Property including a credit bid in an amount equal to the amount of Rass's alleged claim against ND. To better evaluate a bid from Rass, the Trustee sought discovery from Rass regarding its loan. The Trustee filed a motion seeking a Rule 2004 exam of Rass and related documents (Case No. 15-58440 Doc. No. 1135), which the Court granted on July 11, 2019 (Case No. 15-58440 Doc. No. 1138). The Trustee also issued subpoenas to Rass and its principals (Case No. 15-58440 Doc. No. 1139). Meanwhile, Norcross Hospitality sought discovery from Habersham regarding its financial viability as a stalking horse (Case No. 15-58440 Doc. No. 1152), which the Trustee opposed (Case No. 15-58440 Doc. No. 1153). The Court held a telephonic hearing on July 24, 2019 at which it considered the various discovery requests and denied Norcross Hospitality's request for discovery from Habersham (Case No. 15-58440 Doc. No. 1155). Mr. Thakkar (Case No. 15-58440 Doc. No. 1156) and Niloy and Rohan Thakkar (Case No. 15-58440 Docs. Nos. 1157 & 1170) then filed

renewed objections to the bid procedures and sale, and the Trustee filed additional declarations in support of the sale (Case No. 15-58440 Docs. Nos. 1162 & 1163).

The Trustee conducted an auction on July 31, 2019, and the Court held a hearing on the sale motion on August 2, 2019. At the hearing, the objections by Rass, Niloy and Rohan Thakkar, and Mr. Thakkar were withdrawn, and the Court approved the sale of the Property to Rass for $12,795,000, including a credit bid in the amount of $4,100,000 (the principal amount of Rass's post-petition loan to ND) (Case No. 15-58440 Doc. No. 1171). The Chapter 11 Trustee received net sales proceeds in the amount of $8,450,834.28. In order to facilitate the administration of the estate, the Trustee filed a motion to approve a settlement with Westplan and Accent as well as the Thakkars (Mr. Thakkar, Niloy Thakkar, Saloni Thakkar) and ND (Case No. 15-58440 Doc. No. 1176), pursuant to which the parties agreed to broad, reciprocal releases. The Court held a hearing on the settlement motion on September 12, 2019. No objections were filed, and no parties appeared to oppose the motion. Accordingly, the Court entered an order granting the motion to approve settlement on September 13, 2019 (Case No. 15-58440 Doc. No. 1209).

Rass filed a Motion for Allowance of Administrative Expense Claim for the interest on its post-petition claim (Case No. 15-58440 Doc. No. 1180). The Court has approved a settlement allowing Rass an administrative expense claim in the amount of $404,260 for interest accrued at 10 percent on the principal amount of $4,100,000 from August 20, 2018 through August 16, 2019 (Case No. 15-58440 Doc. No. 1416).

Norcross Hospitality filed a motion seeking *nunc pro tunc* approval and administrative expense treatment of the note executed by ND in favor of Norcross Hospitality, and the Court held an evidentiary hearing on the Motion on June 23, 2020. The Court entered an order on July 31, 2020 (Case No. 15-58443 Doc. No. 158) in which it found the actions of ND and Norcross

Hospitality did not justify the award of an administrative expense claim. Nevertheless, because all creditors will be paid in full, the Court directed that Norcross Hospitality's principal claim of $5,169,212.32 be paid to the extent funds are available after all creditors are paid. The Court entered its order on the claim of Norcross Hospitality on July 31, 2020, which it amended on August 7, 2020.

Well after the sale of the Property and resolution of Norcross Hospitality's alleged claim and the effective date of the plan, ND, through its interest holders Niloy and Rohan Thakkar, filed a complaint on January 12, 2021 against the Trustee and Rass (Adv. Proc. No. 21-5008). ND contends for the first time that title to the Property vested with ND, not the estate, and the sale to Rass is not valid. The adversary proceeding remains pending.

      C.   <u>Nilhan Financial Claims</u>

Nilhan Financial was an affiliate of the Debtors when the cases were filed, and ND's schedules reflected a debt to Nilhan Financial of $9.5 million. On March 20, 2017, an involuntary bankruptcy petition was filed against Nilhan Financial in the United States Bankruptcy Court for the Middle District of Florida. An order for relief was entered and on December 15, 2017, the case was converted to Chapter 7, and a trustee was appointed for Nilhan Financial. On September 4, 2019, Norcross Hospitality, Niloy, and Rohan Thakkar filed a Motion for Order: 1) Amending Schedules; or 2) In the Alternative, Requiring the Trustee to Amend Schedules as Necessary to Reflect Status of Certain Scheduled Claims as Disputed and Subject to Offset (Case No. 15-58440 Doc. No. 1200). They argued the schedules of all Debtors, including ND, should be amended by the Trustee to reflect different amounts due to Nilhan Financial. The motion asked the court to order the Trustee to investigate the schedules and amend them.

After the mediation failed, Norcross Hospitality and Rohan and Niloy Thakkar collectively filed an Objection to Scheduled Claims of Nilhan Financial, LLC in each of the ND and NRCT cases seeking to disallow or reduce the scheduled claims of Nilhan Financial or, alternatively, to require or permit the schedules to be amended to show the Nilhan Financial claims as disputed (Case No. 15-58440 Doc. No. 1269). Norcross Hospitality and the Thakkars objected to the claim on the basis that the $9,500,000 claim listed on the schedules was just an allocation of the Wells Fargo debt actually owed by Nilhan Financial to Wells Fargo, and not debt owed by ND to Nilhan Financial, and the claim was subject to reduction through set-off or recoupment or counterclaim, particularly for the amount ND paid on the Wells Fargo debt owed by Nilhan Financial.

The Trustee, Gateway, and the Chapter 7 Trustee for Nilhan Financial all responded (Case No. 15-58440 Docs. Nos. 1294, 1295, & 1296) and opposed the motion to amend and objection. The Court held an evidentiary hearing on February 4, 2020. The Court found ND owed $9,500,000 to Nilhan Financial at the time the bankruptcy case was filed but, whether called setoff or recoupment, ND paid funds to Wells Fargo to satisfy Nilhan Financial's primary obligation to Wells Fargo. The Court requested the parties provide the specific amount paid by ND to Bay Point from the sale of the Property during the case. On March 26, 2020, the Trustee filed a notice and supporting documentation showing ND paid $7,200,000 to Bay Point (Case No. 15-58440 Doc. No. 1359). The Court entered an Amended and Restated Order on April 3, 2020, in which it allowed Nilhan Financial a claim in this case in the amount of $9,500,000 less the $7,200,000 paid on the Wells Fargo debt on account of the sale of the Property (Case No. 15-58440 Doc. No. 1365). The claims of Nilhan Financial in the amount of $83,672 and $15,434.07, to which no objections were made, were also allowed.

D.   Plan and Dismissal

At various points throughout the case, the Thakkars have sought to dismiss this and the other Debtors' cases.  Mr. Thakkar, acting *pro se* as managing member of the Debtors, filed a Motion to Dismiss (Case No. 15-58440 Doc. No. 1060) on May 20, 2019.  With the assistance of counsel, he filed an Amended Motion to Dismiss on July 9, 2019 (Case No. 15-58440 Doc. No. 1134), which adopted and amended his previous motion to dismiss.  Niloy and Rohan Thakkar also sought dismissal of the case while the Trustee was seeking to sell the Property (Case No. 15-58440 Doc. No. 1123).  On July 29, 2019, the Trustee filed a response in opposition to the requests for dismissal (Case No. 15-58440 Doc. No. 1160), arguing the proposals to dismiss the cases upon paying some but not all claims constituted an impermissible structured dismissal.  Gateway and the Nilhan Financial Trustee joined in opposing dismissal of the case (Case No. 15-58440 Docs. Nos. 1167 & 1168).

Before the Court heard the requests for dismissal, the Trustee filed a Motion for Order Directing Mediation (Case No. 15-58440 Doc. No. 1193, amended at Doc. No. 1194).  No one objected, and the Court authorized and directed mediation and appointed retired Bankruptcy Judge Mary Grace Diehl as mediator (Case No. 15-58440 Doc. No. 1201).  The Trustee and his counsel, among others, attended the mediation on October 24 and 25, 2019, which then continued telephonically for several days thereafter.

After the mediation concluded with no agreement, the Court scheduled a hearing for January 16, 2020 to consider the Thakkars's prior requests for dismissal.  Prior to the hearing, the Trustee, Gateway, and the Nilhan Financial Trustee filed supplemental responses in opposition to dismissal (Case No. 15-58440 Docs. Nos. 1280, 1283 & 1284).  The Court determined dismissal was not appropriate and the issues regarding both Norcross Hospitality and the Nilhan Financial

13

claims had to be resolved.  The Court scheduled an evidentiary hearing to consider the objection to Nilhan Financial' s claims and directed the Trustee to propose a plan to bring the case to a resolution.

The Trustee filed a Chapter 11 Plan of Liquidation (Case No. 15-58440 Doc. No. 1317) and Disclosure Statement (Case No. 15-58440 Doc. No. 1318) on February 18, 2020.  The Court held a hearing on the disclosure statement on March 24, 2020, after which the Court entered a scheduling order directing any interested party, including the Chapter 11 Trustee and parties holding equity interests, seeking to file an amended plan and disclosure statement to do so by April 9, 2020.  The Trustee filed a First Amended Chapter 11 plan (Case No. 15-58440 Doc. No. 1373) and disclosure statement (Case No. 15-58440 Doc. No. 1374) on April 9, 2020.

On April 20, 2020, Mr. Thakkar filed a Motion Requesting Establishment Of Deadlines and Dismissal of Bankruptcy Case (Case No. 15-58440 Doc. No. 1393), and requested the Court shorten notice and schedule an expedited hearing on dismissal.  The Trustee objected to both the shortening of time and dismissal of the case (Case No. 15-58440 Docs. Nos. 1409 & 1412). Gateway and the Nilhan Financial Trustee both joined in the Trustee's opposition to dismissal (Case No. 15-58440 Docs. Nos. 1414 & 1415).  The Trustee filed a Second Amended Chapter 11 Plan (Case No. 15-58440 Doc. No. 1402) and disclosure statement (Case No. 15-58440 Doc. No. 1403).

The Court held a hearing on April 30, 2020, after which it converted the Bay Circle case and severed the remaining cases from joint administration (Case No. 15-58440 Doc. No. 1420). The Court then set deadlines for the parties to object to the Norcross Hospitality claim and scheduled an evidentiary hearing.

14

On August 6, 2020, the Trustee filed a Third Amended Plan (Case No. 15-58443 Doc. No. 160) and accompanying disclosure statement (Case No. 15-58443 Doc. No. 161); the Trustee later filed an exhibit to the disclosure statement on September 9, 2020 (Case No. 15-58443 Doc. No. 186). Norcross Hospitality objected to the disclosure statement (Case No. 15-58443 Doc. No. 185). The Court held a hearing on September 10, 2020 regarding the disclosure statement for the Third Amended Plan.

The Trustee filed a Fourth Amended Plan (Case No. 15-58443 Doc. No. 190) on September 22, 2020 that provided for payment in full of allowed administrative claims, allowed priority claims, and administrative convenience unsecured claims. On September 25, 2020, the Court entered an Order And Notice (I) Waiving Distribution Of A Disclosure Statement And Plan Solicitation To Unimpaired Classes, (II) Establishing Deadline For Filing Objections To Confirmation Of The Plan And (III) Setting A Hearing On Confirmation Of The Plan (Case No. 15-58443 Doc. No. 191). Norcross Hospitality filed an objection to the Fourth Amended Plan (Case No. 15-58443 Doc. No. 204), to which the Chapter 7 Trustee for Nilhan Financial responded (Case No. 15-58443 Doc. No. 205), and Norcross Hospitality replied (Case No. 15-58443 Doc. No. 209). Meanwhile, the Trustee filed a declaration in support of plan confirmation (Case No. 15-58443 Doc. No. 207).

The Court held a hearing on confirmation on November 11, 2020 at which counsel for the Trustee argued in support of confirmation and counsel for Norcross Hospitality reiterated its objections that the plan was overly broad, that Nilhan Financial should not receive interest on its claim, and the proposal to address tax withholdings due to the Georgia Department of Revenue was poorly thought out. The Court agreed the plan needed to be amended to, among other things, clarify the plan agent would only take certain actions when necessary and to set up a process to

15

resolve the estate's potential Georgia tax liability.  The Court instructed the Trustee to amend the plan by December 3, 2020.

The Trustee filed a Fifth Amended Chapter 11 Plan (Case No. 15-58443 Doc. No. 220) on December 2, 2020.  After reviewing the amended version, the Court communicated with counsel for the Trustee and counsel for Norcross Hospitality on December 4, 2020 about additional necessary changes, including explaining the procedure for resolution of claims potentially owed to the Georgia Department of Revenue.  The Trustee filed a Sixth Amended Chapter 11 Plan (Case No. 15-58443 Doc. No. 225) incorporating the requested changes on December 8, 2020.  The Court confirmed the Sixth Amended Plan on December 8, 2020 (Case No. 15-58443 Doc. No. 227).  The plan became effective on December 23, 2020.  The plan provided for immediate payment to certain creditors, and alternative means of distribution to Nilhan Financial and Norcross Hospitality depending on the outcome of Norcross Hospitality's appeal of this Court's order.  The plan also provided for the release of the Trustee and MMM for actions that pre-dated the effective date.

E.    Fee Applications

MMM filed five interim fee applications.  The Second, Third, and Fourth applications were unopposed.  All five were granted by the Court, though the Court only approved 90% of the fees sought in the Fifth Application and reserved the remaining 10% for further consideration upon final application.  To date, counsel has been paid fees in the amount of $390,622.28.  In its Sixth and Final Fee Application and Supplement, MMM seeks allowance and payment of an additional $84,108.16 in fees (including the amount withheld from the Fifth Interim Fee Application), for a total of $474,730.44.

MMM filed its First Interim Fee Application (Case No. 15-58440 Doc. No. 1023) on April 19, 2019 for fees and expenses incurred from December 11, 2018 through March 31, 2019.

Counsel not only sought compensation for work done in each of the individual bankruptcy cases, but it also sought fees and expenses for "general" work done on behalf of all the Debtors, which it divided by all five Debtors.  The First Interim Fee Application included fees and expenses incurred at the outset of the case reviewing the docket and the various schedules, examiner's reports, relationships among the Debtors and other entities, reviewing monthly operating reports for the Debtors, and attending status conferences.  MMM also spent time preparing the motions to retain MMM and GlassRatner Advisory & Capital Group, LLC ("GlassRatner") as financial advisor, including conducting an extensive conflicts check, and their initial fee applications as well as responding to Mr. Thakkar's motion to reconsider appointing a trustee and Thakkar's objection to MMM's retention.  In the ND case, counsel worked on matters regarding a potential sale of the Property, investigated the Rass and Norcross Hospitality claims and transfer of property, and reviewed the Westplan litigation, including the retention of counsel and issues regarding abandonment of claims.

Mr. Thakkar, as managing member of ND, filed an objection (Case No. 15-58440 Doc. No. 1044).  He also filed a motion to continue the hearing on the interim fee application (Case No. 15-58440 Doc. No. 1058), stating he believed the fees were excessive and for services beyond the scope of what was required.  The Trustee responded that Mr. Thakkar did not have standing to object to MMM's fees and it was Mr. Thakkar's conduct that caused the Trustee to incur additional fees and expenses (Case No. 15-58440 Doc. No. 1071).  The Court held a hearing on May 30, 2019, after which it authorized the Trustee to pay MMM a total of $51,509.02, consisting of $15,730.50 for fees specific to ND plus $14,566.52 for its allocable share of general fees and expenses incurred by all the Debtors (Case No. 15-58440 Doc. No. 1083).

17

MMM filed its Second Interim Fee Application (Case No. 15-58440 Doc. No. 1173) on August 9, 2019 seeking fees and expenses incurred from April 1, 2019 through August 2, 2019. The Second Interim Fee Application covered work in the ND case including reviewing post-petition financing documents in favor of Rass and Norcross Hospitality and conducting discovery about the same; reviewing potential offers for the Property, drafting bid procedures, reviewing bids and the purchase and sale agreement with Habersham, preparing for and conducting an auction, and preparing for and attending hearings regarding the bid procedures and sale; considering and responding to proposals from equity and Mr. Thakkar regarding purchasing the Property and dismissal; and initial conversations regarding the Nilhan Financial claims. The "general" category applicable to multiple Debtors included fees for preparing and revising MMM's and GlassRatner's fee applications, reviewing and responding to Mr. Thakkar's motion to dismiss, and consultations about Nilhan Financial's claims in the various cases. No objections were filed, and the Court approved the Second Interim Fee Application and authorized the Trustee to pay MMM a total of $146,932.65, consisting of $131,566.50 for fees specific to ND plus $15,366.15 for general fees and expenses incurred by all the Debtors split 1/3 between Sugarloaf, ND, and NRCT (Case No. 15-58440 Doc. No. 1198).

MMM filed its Third Interim Fee Application (Case No. 15-58440 Doc. No. 1268) on November 20, 2019 seeking fees and expenses for the period August 3, 2019 through October 31, 2019, including fees and expenses related to preparing for and attending the mediation and further discussions regarding Gateway's interests and Nilhan Financial's claims. The application covered finalizing documents necessary to close the sale of the Property to Rass, settlement of the Westplan adversary proceeding, research regarding tax liability from the Second Sale, reviewing and responding to Rass and Norcross Hospitality's motions for administrative expense claims, and

18

analysis of Gateway charging orders and the related requests for sanctions.  No objections were filed, and the Court granted the request for $29,164.00 in fees specific to ND and $23,176.78 for 1/3 of the general fees and expenses incurred by all Debtors (split between Sugarloaf, ND, and NRCT), for a total of $52,340.78 (Case No. 15-58440 Doc. No. 1272).

MMM filed its Fourth Interim Fee Application (Case No. 15-58440 Doc. No. 1349) on March 23, 2020 seeking $20,194.00 for fees incurred in the ND case, $21,087.67 for 1/3 of the general fees (split between Sugarloaf, NRCT, and ND), and $17,655.50 for 1/2 of the fees related to resolution of Nilhan Financial's claims (split between NRCT and ND), for a total of $58,937.17, covering the period of November 1, 2019 through February 29, 2020.  The Fourth Interim Fee Application covered the period after the mediation concluded without a settlement and the Trustee and his counsel considered possible ways to resolve the Nilhan Financial and Norcross Hospitality claims and, ultimately, the case.  Counsel spent time responding to the motion to require amendment of the schedules and the motion to temporarily allow the Nilhan Financial claims, and significant research on subrogation, setoff, and other theories to reduce the Nilhan Financial claim. No objections were filed, and the Court entered an order approving the fees on April 14, 2020 (Case No. 15-58440 Doc. No. 1380).

MMM filed its Fifth Interim Fee Application (Case No. 15-58443 Doc. No. 156) on July 21, 2020 seeking $98,502.00 for fees incurred in the ND case, $11,537.48 for 1/3 of the general fees and expenses (split between Sugarloaf, NRCT, and ND), and $3,421.25 for 1/2 of the fees related to resolution of Nilhan Financial's claims (split between NRCT and ND), for a total of $113,460.73 covering the period March 1, 2020 through July 16, 2020.  The Fifth Interim Fee Application included fees incurred in the plan process and responding to motions to dismiss, time settling Rass's claim, and preparation for and conduct of the evidentiary hearing regarding

Norcross Hospitality's claim followed by supplemental briefing. Mr. Thakkar filed an objection on August 11, 2020 (Case No. 15-58443 Doc. No. 166), which he amended on August 12, 2020 (Case No. 15-58443 Doc. No. 168). The Court held a hearing on August 13, 2020, after which it awarded MMM 90% of its requested fees and 100% of expenses for $102,114.66 and reserved 10% for consideration with a final application (Case No. 15-58443 Doc. No. 170).

MMM filed its Sixth and Final Application for Fees on August 26, 2020 (Case No. 15-58443 Doc. No. 233) seeking $76,218.18 through December 23, 2020. The Sixth Fee Application sought fees revising and presenting the Trustee's Chapter 11 plan and disclosure statement, and addressing the objections thereto, which ultimately led to plan confirmation; reviewing the appeal of the Norcross Hospitality claim order and filing appellate briefs; and preparing the final fee applications. MMM also sought the $11,346.07 deferred from the Fifth Interim Fee Application. The "Debtor" objected (Case No. 15-58443 Doc. No. 245). The Court held a hearing on the Application on January 21, 2021 at which counsel for MMM (Frank DeBorde and Lisa Wolgast), counsel for the "Debtor" (John Moffa),[3] counsel for Gateway (Clay Townsend), and counsel for the United States Trustee (David Weidenbaum) appeared telephonically.

---

[3] John Moffa, who filed the objection to the Sixth and Final Fee Application, is at least the sixth attorney to appear in these cases for ND, its manager Chuck Thakkar, and its equity holders Rohan and Niloy Thakkar. He filed a *pro hac vice* application in this case to represent Rohan and Niloy Thakkar. His application was granted on June 26, 2020 (Case No. 15-58443 Doc. No. 145). Notwithstanding that his *pro hac* application was only to represent Rohan and Niloy Thakkar, he has filed pleadings on behalf of Norcross Hospitality and now apparently on behalf of the "Debtor." With each new counsel comes a rehashing of matters already resolved consistent with Mr. Thakkar's prior testimony that he will litigate until he dies. The cases were filed by John Christy as counsel for ND. He withdrew on June 18, 2018. Richard Robbins appeared in the case for Chuck Thakkar, Niloy and Rohan Thakkar, and other non-debtor Thakkar controlled entities and as special litigation counsel to the Debtors in June 2015. He withdrew as counsel on May 8, 2019. Denise Dotson was retained as special litigation counsel for the Debtors in Jan 2018 then appeared on behalf of ND and other related debtors as general counsel on June 12, 2018. She never formerly withdrew, but after the appointment of a trustee, she then represented Chuck Thakkar individually. Ian Falcon appeared for Chuck Thakkar individually on February 4, 2019, but he withdrew on February 11, 2019. Henry Sewell appeared in the cases first on May 23, 2019 for Niloy Inc. and subsequently appeared on behalf of Niloy and Rohan Thakkar and Norcross Hospitality.

F.    Summary of Objections

Mr. Thakkar objected to MMM's Fifth Interim Fee Application, and the "Debtor" objected

to the Sixth and Final Fee Application.  The Court categorizes the objections to the MMM

applications as follows:

1.  Time spent on the Second Sale of the Property is not compensable because the
    Property was not property of the estate.
2.  Time spent investigating and litigating the Norcross Hospitality claim was not
    for the benefit of the estate because the Property was not property of the estate.
3.  Time spent defending the Nilhan Financial claim was not for the benefit of the
    estate and excessive.
4.  The filing of a plan and disclosure statement was unnecessary, as the case
    should have converted to a Chapter 7 case, and the time spent was excessive.
5.  MMM cannot be paid for the time it spent preparing the Trustee's and
    GlassRatner's fee applications.

As MMM points out in its Supplemental Response, the Thakkars and ND agreed to settle

various claims with the Trustee and the Westplan parties in exchange for broad, reciprocal releases

(Case No. 15-58440 Doc. No. 1176).  The agreement, which was entered into and signed by Niloy

Thakkar, Saloni Thakkar, and Mr. Thakkar on behalf of ND, provided:

> Further, the [Thakkars] agree that they shall not object, and hereby waive and
> relinquish any rights for making any objection, to any application for compensation of
> reasonable fees or expenses made by or on behalf of the Trustee or any professionals
> of the Trustee for work performed in the Bankruptcy Case.

(Case No. 15-58440 Doc. No. 1176).  The Court entered an order granting the motion to approve

settlement on September 13, 2019 (Case No. 15-58440 Doc. No. 1209).  Pursuant to the settlement

agreement approved by the Court, the Thakkars agreed to waive the very objections they now

bring.

Nevertheless, the Court has an independent duty to investigate the reasonableness of

compensation even in the absence of any objection voiced by a party in interest.  In re Sarkis

Investments Co., LLC, 2019 WL 9243005, *10 (Bankr. C.D. Cal. Sept. 5, 2019).  Further, interim

fee awards under section 331 are not final and are subject to further consideration at the conclusion

of the case.  In re Marshall, 2010 WL 3959612, *3 (Bankr. E.D. Va. Oct. 11, 2010).  Accordingly,

the Court will address each contention.

## II.    LAW ON FEE APPLICATIONS

"Reasonable" compensation for trustees and their attorneys is permitted under 11 U.S.C.

§ 330 for "actual, necessary services rendered by the trustee" or his attorney.  11 U.S.C.

§ 330(a)(1)(A).  The burden is on the attorney seeking compensation to prove the requested

compensation is reasonable.  See In re Dabney, 417 B.R. 826, 834 (Bankr. N.D. Ga. 2009).

Reasonableness is determined by applying a lodestar analysis, looking at the hours reasonably

spent and the reasonable hourly charge.  See Norman v. Hous. Auth. of the City of Montgomery,

836 F.2d 1292, 1299 (11th Cir. 1988).  To determine whether the hourly rates and number of hours

expended are reasonable, the Court must take into account all relevant factors, including those

specified in section 330.  The statute provides that courts should consider the following:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at
> the time at which the service was rendered toward the completion of, a case under
> this title;
> (D) whether the services were performed within a reasonable amount of time
> commensurate with the complexity, importance, and nature of the problem, issue,
> or task addressed;
> (E) with respect to a professional person, whether the person is board certified or
> otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation
> charged by comparably skilled practitioners in cases other than cases under this
> title.

11 U.S.C. § 330(a)(3).  Bankruptcy courts "must also consider whether the bankruptcy assets were

administered as economically as possible and whether any of the services rendered were

duplicative or non-legal."  Grant v. George Schumann Tire & Battery Co., 908 F.2d 874, 878 (11th

Cir. 1990).

The size of a fee request may invite a close review, but size alone is not grounds to disallow a fee. <u>Marshall</u>, 2010 WL 3959612, at *63. Instead, the court must consider fees in the context of the tasks undertaken and whether they are reasonable and necessary, looking at the nature of the problems faced, the work done to address them, and any opposition or cooperation the trustee received. The leading case with regard to the factors to be considered in determining a reasonable allowance of compensation for attorneys is <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974), in which the court considered the following twelve factors:

(1) the time and labor required;
(2) the novelty and difficulty of the questions presented by the case;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of a case;
(5) the customary fee for similar work in the community;
(6) whether the fee is fixed or contingent;
(7) time pressures imposed by the client or the circumstances;
(8) the amount involved and results obtained as a result of the attorneys' services;
(9) the experience, reputation and ability of the attorneys;
(10) the desirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

<u>Id.</u> at 717-719. Each <u>Johnson</u> factor must be considered in light of the other factors. <u>Neville v. Eufaula Bank & Tr. Co. (In re U.S. Golf Corp.)</u>, 639 F.2d 1197, 1205 (5th Cir. 1981).

In order to properly object to an application for compensation, the objecting party must prove, with specific evidence, that the requested fees are unreasonable. <u>See</u> <u>In re SGE Mortg. Funding Corp.</u>, 301 B.R. 915, 917 (Bankr. M.D. Ga. 2003). A general objection to all fees and expenses is not proper, and "[g]eneral dissatisfaction or a disagreement over business judgment will not suffice" to support an objection to fees. <u>Id.</u>; <u>see also</u> <u>In re Golf Augusta Pro Shops, Inc.</u>, 2004 WL 768576, *2 (Bankr. S.D. Ga. Feb 6, 2004) (overruling objection that generally complained that certain tasks were not necessary and applicant spent too much time on them without providing specific details).

Additionally, section 330(a)(4)(A) provides that a court should not award compensation for certain services.  The section states:

> Except as provided in subparagraph (B), the court shall not allow compensation for—
>> (i) unnecessary duplication of services; or
>> (ii) services that were not—
>>> (I)      reasonably likely to benefit the debtor's estate; or
>>> (II)     necessary to the administration of the case.

11 U.S.C. § 330(a)(4)(A).  Examples of services that do not benefit the estate are work performed on non-bankruptcy matters, services rendered to benefit the debtor personally, and services that were actually in opposition to the estate's administration.  See In re Watervliet Paper Co., 109 B.R. 733, 735 (Bankr. W.D. Mich. 1989).

But legal services may be "reasonably likely" to benefit a Chapter 11 estate even if no plan of reorganization is proposed or confirmed.  In re Macco Props., Inc., 540 B.R. 793, 868 (Bankr. W.D. Okla. 2015).  "Benefit to the estate . . . is not restricted to success measured by confirmation of a plan or the prospect of confirming a plan."  In re Kitts Dev., LLC, 474 B.R. 712, 721 (Bankr. D.N.M. 2012).  A professional does not have to be 100 percent successful.  In re Cenargo Int'l, PLC, 294 B.R. 571, 596 (Bankr. S.D.N.Y. 2003).  The question is whether a reasonable trustee or his professional would have believed a particular service would benefit the estate.  Id. at 595–96.  For example, counsel's advice and services may benefit the estate "by maximizing value for creditors through an orderly or emergency liquidation of assets by Section 363 sales."  Kitts Dev., 474 B.R. at 721.  Moreover, "[t]he appropriate time for measuring benefit to the estate is as of the time the services are provided, and not at the time the court ultimately reviews the fee application."  Macco Props., 540 B.R. at 868 (quoting In re Schupbach Invs., LLC, 521 B.R. 449 (table) (B.A.P. 10th Cir. 2014)).  Thus, "[c]ourts may allow compensation where counsel's services promoted the

24

bankruptcy process and contributed to the administration of the estate, but did not otherwise provide an economic benefit to the estate." Id.

"In addition, '[n]ecessary and actual fees are allowable in situations where the fees are unavoidably incurred,' such as responding to events not subject to counsel's control, 'even if they are not of a benefit to the estate.'" Macco Props., 540 B.R. at 868 (quoting Van Cott, Bagley, Cornwall & McCarthy v. B.R.&F., L.C. (In re Ricci Inv. Co.), 217 B.R. 901, 907 (D. Utah 1998)). The amount of time reasonably necessary in a particular case depends in part on the vigor with which opponents dispute the issues, and counsel cannot be expected to ignore objections made by opposing parties. See Macco Props., 540 B.R. at 871. For example, courts often find services are necessary, even if they do not ultimately benefit the estate, where there are many obstacles to closing a sale and incurring fees is essentially unavoidable. See id. Counsel must also comply with the direction of the court. Ricci Inv. Co., 217 B.R. at 906-07 (finding fees were necessarily incurred where counsel had no choice but to respond to objections and go forward with the scheduling order as mandated by the court).

## III.   OBJECTIONS TO APPLICATIONS

Although Mr. Thakkar and the "Debtor" raise numerous objections, no dispute exists as to many of the factors the court must consider under section 330 and Johnson. There is no dispute that the time claimed by MMM was actually spent, and the Court finds the time is accurately recorded. There is no dispute as to the reasonableness of the rates, that the rates are customary, or that MMM has the skill and experience to render the services. The Court finds the rates to be reasonable and customary and MMM is skillful and experienced.

The fees for counsel of a trustee are both fixed and contingent. On one hand, the amount to be paid is fixed by an hourly rate; on the other hand, the fee has an element of contingency since

the amount a court will allow is uncertain as is the availability of assets to pay the allowed fees. While MMM previously represented Mr. Glass in other unrelated matters, this prior representation does not factor into the consideration of the nature and length of the professional relationship with the client because prior representations may not be of Mr. Glass as a trustee and, even if they are, he would be serving as a trustee of a different debtor.  In this case, the objections are focused on 1) whether the services were necessary to the administration of or beneficial to the estate, and 2) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the task.

In reviewing the Applications, the Court is particularly aware that representing a Chapter 11 trustee is a unique and complex assignment.  The Court notes a Chapter 11 trustee is only appointed in certain circumstances.  The appointment of a Chapter 11 trustee is an extraordinary remedy and is the exception, rather than the rule.  See In re Intercat, Inc., 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000).  Once appointed, a Chapter 11 trustee's duties run to the estate and not a specific creditor.  In re Vill. Concepts, Inc., 2019 WL 2252497, *4 (Bankr. E.D. Cal. May 17, 2019).  The trustee and counsel are thrown into a case they know nothing about.  That is especially true here since the cases were pending for over three years and the docket included over 900 entries by the time the Trustee was appointed.  Moreover, when a trustee is appointed in a Chapter 11 case, by definition, something is awry in the case and the trustee is expected to act immediately to secure assets and address the issues causing the appointment.  Almost always, a trustee's presence in a Chapter 11 case is unwelcome by the debtor, and obtaining cooperation is typically more challenging than if the attorney were representing the debtor.  The Court must therefore consider the situation in which MMM found itself as a result of the Court's appointment of a trustee when reviewing the applications.

A.    <u>Time Spent on Second Sale of Property</u>

The "Debtor's" primary objection is a new theory that the Property was not property of the estate after its sale to Accent and the repurchase of the Property by ND did not result in it being property of the estate.  The "Debtor" has filed a complaint against the Trustee on this theory and contends the Court must resolve the adversary proceeding before addressing the fees incurred in connection with the Second Sale.  The question for the Court is whether the fees related to the Second Sale were necessary to the administration of the estate or beneficial to the estate at the time at which the service was rendered.  The Court must consider whether a reasonable trustee or his professional would have believed a particular service would benefit the estate.  The time for measuring benefit is as of the time the services are provided, not the time the fee application is reviewed.  <u>Macco Props., Inc.</u>, 540 B.R. at 868 ("[t]he appropriate time for measuring benefit to the estate is as of the time the services are provided, and not at the time the court ultimately reviews the fee application." (quoting <u>Schupbach Invs., LLC</u>, 521 B.R. 449).

Without deciding the adversary proceeding, at the time the Trustee and MMM proceeded with the Second Sale of the Property, everyone in the case, including Mr. Thakkar, believed the Property was property of the estate.  In the contract approved by the Court, ND received an option to repurchase the Property upon certain contingencies.  Accent sent notice to ND of its right to exercise the option pursuant to the contract (Case No. 15-58440 Doc. No. 904 p. 15), referencing the contract and ND as the Seller who had the right to exercise the option.  Title was taken in the name of ND (Case No. 15-58440 Doc. No.904 p. 19).  ND filed an adversary proceeding against Westplan (Adv. Proc. No. 18-5193) asserting Westplan breached the sale contract by not obtaining the zoning.  No party contended the contract was not binding; to the contrary, both Westplan and ND argued the contract governed their actions post-closing.  After the repurchase of the Property,

27

ND filed a Motion Requesting Entry of Order (1) Transferring or Assigning Real Property and Authorizing Assumption of Debt Obligations, or Alternatively, (2) Authorizing Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code Nunc Pro Tunc on November 8, 2018 (Case No. 15-58440 Doc. No. 904) in which it sought retroactive approval of the financing transaction and authority to transfer the Property to Norcross Hospitality, explaining that it had exercised the buyback option. The reason given for not seeking approval in advance was that ND's representatives were involved in a trial in Florida. At no time did the "Debtor" take the position it was acting outside the bankruptcy case.

The Trustee filed a motion to retain a broker to sell the Property (Case No. 15-58440 Doc. No. 982)—no one contended the estate could not sell the Property. A motion to sell was filed on May 20, 2019 (Case No. 15-58440 Doc. No. 1060). Equity holders Niloy and Rohan Thakkar filed an objection on July 1, 2019 (Case No. 15-58440 Doc. No. 1123, amended at Case No. 15-58440 Doc. No. 1170) stating that the Property "is the primary asset of Nilhan Developers" and its sale was not necessary to pay the claims. The objection never alleged the Property was not property of the estate, but rather sought an alternative solution to paying creditors than a sale by auction. Mr. Thakkar individually, as manager of ND, filed an objection to the sale on July 26, 2019 (Case No. 15-58440 Doc. No. 1156), but, again, he never suggested the Property was not property of the estate.

After the Second Sale of the Property to Rass, Norcross Hospitality filed a motion for an administrative expense claim (Case No. 15-58440 Doc. No. 1182) in which it alleged it was a creditor "of the Estate of Nilhan Developers, LLC." The motion states Norcross Hospitality advanced over $5 million to ND "to enable Nilhan Developers to exercise a court-approved option to retain certain real property which ultimately resulted in significant value for this Estate."

28

The Property was sold with retention of the buyback option, Accent notified ND of the right to buy back the Property (Case No. 15-58440 Doc. No. 904), ND responded to the option by paying the amount demanded in the time frame demanded, and title was taken in ND.  Not only did MMM review the pleadings in the case and talk to the parties, as evidenced by their fee applications, but the Second Interim Fee Application reflects that MMM reviewed the deeds and considered title issues (see time entries for June 17, 2019; July 1, 2019; July 22, 2019; and July 25, 2019), and talked to Calloway Title several times (see time entries for April 1, 2019; June 24, 2019; June 25, 2019; and July 24, 2019) (Case No. 15-58440 Doc. No. 1173-3).  The Court concludes that, based on the facts known to the Trustee at the time and the positions of the parties, MMM's and the Trustee's actions to sell the Property were necessary, beneficial, and reasonable.  If it turns out that the position advocated in the current adversary proceeding that the Property was not property of the estate is correct, the Court will make whatever judgments are called for at that time.

> B.     Time Spent Investigating and Litigating the Norcross Hospitality Claim

The "Debtor" contends MMM should not be compensated for the time it spent investigating and litigating the Norcross Hospitality claim because MMM's work was not for the benefit of the estate because the Property was not property of the estate and Norcross Hospitality was not actually a creditor of the estate but of the separate "Debtor."

As the Court stated above, everyone, including Norcross Hospitality, took the position the Property was property of the estate.  Norcross Hospitality alleged in its Motion for Administrative Claim that it was a creditor "of the Estate of Nilhan Developers, LLC" and that its advance of funds enabled ND to exercise "a court-approved option" for the Property which "ultimately resulted in significant value for this Estate."  (Case No. 15-58440 Doc. No. 1182).  It was therefore

imminently reasonable for the Trustee to take action to analyze the claim against the estate and take appropriate action. The Trustee responded to the motion and explained that resolving whether the Norcross Hospitality claim was allowed, and in what manner and priority, had significant ramifications for the estate and other creditors and to the structure of the Trustee's plan. If the Norcross Hospitality Claim was disallowed or subordinated to the claims of other creditors, all creditors would be paid in full. If, instead, it was allowed, either as an administrative claim or general unsecured claim sharing with other claimants, with or without interest, the creditors' claims will not be paid in full.

Moreover, Norcross Hospitality filed the motion. The Trustee responded. A trustee may be compensated for responding to pleadings even if the response does not directly benefit the estate. Macco Props., 540 B.R. at 868. Counsel's legal research was helpful to the Court in conducting its analysis and making its ultimate determination. The Court concludes that, based on the facts known to the Trustee at the time and the positions of the parties, MMM's and the Trustee's efforts responding to Norcross Hospitality were necessary, beneficial, and reasonable.

C.      Time Spent on the Nilhan Financial Claim

ND's schedules reflected a debt to Nilhan Financial of $9.5 million. On September 4, 2019, Norcross Hospitality, Niloy, and Rohan Thakkar filed a Motion for Order: 1) Amending Schedules; or 2) In the Alternative, Requiring the Trustee to Amend Schedules as Necessary to Reflect Status of Certain Scheduled Claims as Disputed and Subject to Offset (Case No. 15-58440 Doc. No. 1200). They argued the schedules of all debtors, including ND, should be amended by the Trustee to reflect different amounts due to Nilhan Financial. Norcross Hospitality and the Thakkars contended the $9.5 million claim listed in ND's schedules was just an allocation of the Wells Fargo debt actually owed by Nilhan Financial to Wells Fargo, and not debt owed by ND to

Nilhan Financial.  They contended the claim was subject to reduction through set-off or recoupment or counterclaim, particularly for the amount ND paid on the Wells Fargo debt owed by Nilhan Financial.  The motion asked the court to order the Trustee to investigate the schedules and amend them.

After the mediation failed, Norcross Hospitality, Niloy, and Rohan Thakkar filed an objection to the scheduled claims of Nilhan Financial in the ND and NRCT cases and an amended motion requiring the Trustee to amend the schedules (Case No. 15-58440 Doc. No. 1269).  The Trustee filed a response in opposition (Case No. 15-58440 Doc. No. 1294), stating that he had investigated the claims and found no amendments to the schedules were necessary or required. The Nilhan Financial Trustee and Gateway also filed objections to the requested relief.

The Court held a hearing on February 4, 2020 at which the Trustee, the Nilhan Financial Trustee, and Gateway participated along with Chuck Thakkar, on behalf of the movants.  The Court requested subsequent briefing on certain legal issues.  The Court entered an order on March 21, 2020 disallowing in part and allowing in part the scheduled claims of Nilhan Financial (Case No. 15-58440 Doc. No. 1347).  In a subsequent order on March 24, 2020 (Case No. 15-58440 Doc. No. 1356), the Court ordered the Trustee to file a statement setting forth the amount ND paid to Wells Fargo by virtue of the sale of real property so the Court could reduce the Nilhan Financial claim accordingly.  The Trustee did so on March 26, 2020, and the Nilhan Financial Trustee and the moving parties responded.  The Court entered a final order on April 3, 2020 (Case No. 15-58440 Doc. No. 1365).

While this litigation was proceeding, the Court had also instructed the Trustee to file a plan in the case.  Because the status of Nilhan Financial's claim was uncertain, the Trustee filed a motion to temporarily allow and estimate claims of Nilhan Financial for voting purposes (Case

No. 15-58440 Doc. No. 1321).  The Court's decision on Nilhan Financial's claim mooted the motion.

In his objection to MMM's Fifth Interim Fee Application, Mr. Thakkar argues that the time spent by MMM "defending" the Nilhan Financial claims was excessive and unnecessary.  In his view, the Trustee had no stake in the outcome and should have relied on the Nilhan Financial Trustee to do the work.  While the Court withheld 10% of the fees awarded to MMM on its Fifth Interim Fee Application on an interim basis, Mr. Thakkar did not object to the Sixth and Final Fee Application and no one objected to these fees on a final basis on this ground.  Mr. Thakkar's objection to the fee applications is therefore waived.  See In re Stanton, 569 B.R. 840, 844 (Bankr. M.D. Fla. 2017).  Nevertheless, the Court has reviewed the entries related to this work as part of its overall review of the application and finds the fees incurred to be necessary to the administration of the estate.  The Court notes the time allocated to this issue in the Fourth Interim Fee Application is $42,155, and the time allocated to it in the Fifth Interim Fee Application is $7,332.75 for a total of $49,487.75.  Because Mr. Thakkar's objection was not prosecuted, the Court does not have specific entries under challenge, and "[g]eneral dissatisfaction or disagreement" is not sufficient to support a claim objection.  SGE Mortg. Funding Corp., 301 B.R. at 917.

Norcross Hospitality and the Thakkars asked the Court to require the Trustee to investigate and amend the schedules.  The Trustee's counsel spent time doing just that—investigating the claim of Nilhan Financial.  It was appropriate for the Trustee to respond to a motion directed to him and to do factual and legal research to understand the issues raised and to respond.  Macco Props., 540 B.R. at 868 ("'necessary and actual fees are allowable in situations where the fees are unavoidably incurred,' such as responding to events not subject to counsel's control, 'even if they are not of a benefit to the estate.'" (quoting Ricci Inv. Co., 217 B.R. at 907)).  It was also

appropriate for the Trustee to appear at the hearing on the claim objections and to brief the issues raised by Norcross Hospitality and the Court.  A trustee has the duty to investigate the liabilities of a debtor (11 U.S.C. § 1106) and to examine claims (11 U.S.C. §§ 1106 & 704).  The motion requested action against the Trustee, so his counsel needed to appear.  The Trustee's participation in the hearing was largely focused on the finality of the schedules, while the Nilhan Financial Trustee focused on the accuracy of the numbers in the Nilhan Financial schedules.  This is an appropriate division of labor for this Trustee and his counsel.  Finally, the Court asked the Trustee to provide it with the precise amount paid to Wells Fargo so the court could adjust the Nilhan Financial claim, so counsel's time responding to the Court's request is appropriate.  Macco Props., 540 B.R. at 868.  The Court concludes the fees were reasonable and necessary and compensable.

      D.      Time Spent on Plan and Disclosure Statement

The "Debtor" objects to the fees spent in connection with filing and confirming a Chapter 11 plan and now contends the case should have been converted to one under Chapter 7.  Fees for this task are spread over the Fourth and Fifth Interim Fee Applications and the Sixth and Final Fee Application and total $61,858 according to the Court's calculation.

After the mediation concluded with no agreement, the Court scheduled a hearing to consider Mr. Thakkar's requests for dismissal of the ND case, which were filed in May and July 2019.  At the January 16, 2020 hearing, the Court deferred consideration of the motions to dismiss pending the resolution by the court of the Nilhan Financial claims, but the Court also requested any plans be filed by February 18, 2020.  Mr. Thakkar filed another motion to dismiss on April 20, 2020 (Case No. 15-58440 Doc. No. 1393), which was heard on April 30, 2020.  Nilhan Financial, Gateway, and the Trustee objected to dismissal of the case on the basis that provisions needed to be made for resolution of the outstanding issues and payment of any resulting claims

33

(see Case No. 15-58440 Docs. Nos. 1160, 1167, 1168, 1280, 1283, 1284). The structured dismissal proposed by Mr. Thakkar really was in the nature of a plan, with provisions for different contingencies. Moreover, the structured dismissal proposal did not provide adequate safeguards for creditors who were not being paid upon dismissal.

The Trustee filed a plan in this case on February 18, 2020 (Case No. 15-58440 Doc. No. 1317). The Trustee subsequently amended the plan six times in response to objections by Mr. Thakkar, Norcross Hospitality, and "equity" (Case No. 15-58440 Docs. Nos. 1373 & 1402 & Case No. 15-58443 Docs. Nos. 184, 205, & 209) and comments by the Court. The Thakkars objected to many aspects of the plan including how distributions would be made to Nilhan Financial and Norcross Hospitality based on the outcome of pending appeals of the Court's orders. The Thakkars also objected to the Trustee paying taxes to the Georgia Department of Revenue based on an alleged gain from the sale of the Property; they contended no taxes were due. As a result of the objection, and the failure of the Thakkars to provide the Trustee all the information needed, the Court ordered the Trustee to create a process in the plan for determining whether taxes were due. Ultimately, the Court confirmed the plan, choosing confirmation over dismissal.

The short answer as to why the case was not converted is that no one ever asked for it, including Mr. Thakkar, Norcross Hospitality, and Niloy and Rohan Thakkar. The Court raised the possibility of conversion at the hearing on January 16, 2020, which Mr. Thakkar attended as well as representatives of the Trustee, Nilhan Financial, and Gateway. Given the complexities of the distribution and Mr. Glass' knowledge of the case and the disputes in it, the Trustee and the creditors did not believe conversion offered any benefit to the estate. Mr. Thakkar only asked to dismiss the case. Conversion to Chapter 7 would also have resulted in a Chapter 7 trustee investigating causes of action of ND. See 11 U.S.C. § 704(a); In re Pearson Indus., Inc., 178 B.R.

753, 761 (Bankr. C.D. Ill. 1995). The initial plan proposed by the Trustee proposed the same, but Mr. Thakkar strenuously objected (Case No. Doc. No. 1317). It is likely he would not have wanted a Chapter 7 trustee in place who could have further investigated his actions on behalf of the company.

The decision to file a plan, rather than convert the case, was a reasonable decision and necessary for the administration of the estate. The Thakkars intended to appeal any and all decisions regarding Nilhan Financial and Norcross Hospitality, but other creditors' claims were undisputed and could be paid. The plan provided for immediate payment of the undisputed creditors and for the Trustee, as Plan Agent, to hold the remaining funds pending the outcome of the appeals, with instructions on three different ways the funds could be distributed based on the outcome of the appeals. This was not a straightforward simple case, as the "Debtor" contends, and a plan was an appropriate way to address the situation. The cost of the plan was further increased by the Thakkars' objection to the Trustee paying taxes on what appeared to be a gain from the sale of the Property. However, the Thakkars did not provide the Trustee with historic tax returns to justify a different determination. The Trustee is obligated to pay tax liabilities incurred by the bankruptcy estate (26 U.S.C.A. §§ 1398 and 1399; cf. Holywell Corp. v. Smith, 503 U.S. 47 (1992)), so the time spent on the issue was necessary for the administration of the estate. As with virtually everything in this case, the litigiousness of the Thakkars increased the cost. Nevertheless, the Court concludes the fees were reasonable and necessary to the administration of the estate.

E.    Time Spent Preparing the Trustee's and GlassRatner's Fee Applications

The "Debtor" objects to the time in the MMM fee application spent on the Trustee's fee application and the GlassRatner fee applications. It contends that MMM represents the estate and therefore cannot prepare fee applications for the Trustee and his financial advisor. The Court

35

agrees that MMM represents the Trustee as representative of the estate, but it disagrees that MMM cannot recover reasonable fees for the preparation of the fee applications of the Trustee and GlassRatner on the facts of this case. The Court notes section 330(a)(6) permits recovery of reasonable fees for the preparation of fee applications. It does not specify to whom. The filing of fee applications is necessary to the administration of the estate and is a service to the estate and its administrator, the Trustee. Baker Botts, LLP v. ASARCO, LLC, 576 U.S. 121, 132 (2015); In re Stanton, 559 B.R. 781, 784 (Bankr. M.D. Fla. 2016). As the Court in Stanton explained, the issue is whether fees incurred in connection with a fee application "were incurred in service to the estate." Id. at 785. Moreover, the Trustee, as the estate's representative, has a duty to review fee applications and may use counsel to assist in that effort. In re Comput. Learning Ctrs., Inc., 285 B.R. 191, 234 (Bankr. E.D. Va. 2002).

Ron Glass was appointed as trustee in this Chapter 11 case. Mr. Glass is an experienced trustee and receiver, but he is not a "panel trustee." Mr. Glass filed only one application for fees (Case No. 15-58443 Doc. No. 235), and it is the application under consideration. Mr. Glass is not a lawyer. In a routine Chapter 7 case, the Court would expect the trustee to file his own fee application and not retain or use counsel for that purpose. See In re McConnell, 2021 WL 203331, *29 n.90 (Bankr. N.D. Ga. Jan. 4, 2021). But this case is a Chapter 11 case, and it is anything but routine. MMM prepared and filed the application for Mr. Glass. From the Court's review of the Fifth Interim Fee Application and Sixth and Final Fee Application, MMM spent $1,763.50 on his fee application. Of this, $578.50 was specifically incurred in researching whether the Trustee could obtain a commission on a credit bid. The remaining $1,184.50 was spent on general preparation and filing of the fee application. The fee application has many standard provisions,

but it does contain a request for a commission on a credit bid, or a fee enhancement, and does not

contain any description of the time spent by the Trustee in the case.

As discussed above, only fees incurred in service to the estate are recoverable. <u>ASARCO,</u>

<u>LLC</u>, 576 U.S. at 132; <u>Stanton</u>, 559 B.R. at 784.  In <u>In re Morreale</u>, 2019 WL 3385163 (Bankr. D.

Colo. July 3, 2019), the court held that defending a fee application that requested a fee

enhancement was not in service to the estate.  The Court held pursuing such a request was for the

benefit of the trustee himself and separate counsel was required.  <u>Id.</u> at *13.  The Court concludes

the time spent researching and advocating for a commission on the credit bid or for a fee

enhancement was not for the benefit of the estate, but rather for the benefit of the Trustee, and was

not necessary to the administration of the case.  The Court concludes $375 is a reasonable fee for

assisting the Trustee in filing his fee application based upon the amount of time MMM spent

assisting GlassRatner in filing each of its applications.  The remaining $1,388 incurred by MMM

in preparing the application for the Trustee is disallowed.

GlassRatner was retained by the Trustee in this case as his financial advisor.  GlassRatner

is a firm of accountants and financial professionals and not lawyers.  GlassRatner does, however,

typically assist Mr. Glass when he is appointed trustee.  As with a trustee, the Court would expect

a professional firm such as GlassRatner to prepare its own fee applications in a routine Chapter 7

case.  Again, however, this is not such a case.  Typically, the Court permits counsel for a trustee

to be compensated for assistance to other professionals of the trustee.  But these fees are typically

"modest and assist all involved."  <u>Comput. Learning Cntrs.</u>, 285 B.R. at 234.  Such involvement

is usually more efficient for the estate.  If new counsel for GlassRatner were retained to file

GlassRatner's fee application, it likely would have charged much more being otherwise unfamiliar

with the case and would have been entitled to recover the sum under section 330(a)(6).

GlassRatner prepared all its own bills and MMM only prepared the cover application. Here, the total amount MMM billed for preparation of all six of GlassRatner's fee applications is $2,186.53, which averages to just $363 per application. This is a very modest sum and in keeping with the Court's expectation of the cost of performing services necessary to the administration of the estate. The Court concludes MMM's fees for preparing GR's application are compensable. See id.

      F.    The Court's Independent Review of Fees

The Court has independently reviewed each fee application. Sarkis Investments Co., LLC, 2019 WL 9243005, at *10. As set out in the Court's order in Sugarloaf, the general time entries should have been divided differently and certain "general" entries were attributable only to certain Debtors, including ND. MMM has corrected this problem in this final application, showing in detail the reductions and additions in accordance with the Court's Sugarloaf order. The net reduction in their fee request is $3,456.09.

The Court is very familiar with this case, having heard the matters since its inception. The Court has reviewed MMM's time records to determine if any particular entry was unreasonable or unnecessary, or if any series of entries was unreasonable or unnecessary, in the context of the work performed. Marshall, 2010 WL 3959612, at *62. The Court is aware that the amount of fees MMM seeks is significant. However, the work was necessary and was well done, and the amount of fees reflects the challenging nature of the case and litigiousness of the Thakkars. After its review, the Court finds no other changes that need to be made to the fee application, except as stated herein.

## IV.   CONCLUSION

For the reasons stated above, the Court disallows $1,388 for fees incurred in connection with filing the Trustee's application for compensation. The Court allows MMM $82,720.16 for fees withheld in the Fifth Interim Fee Application and fees sought in the Sixth and Final Fee

Application.  All fees previously awarded are approved on a final basis.  So MMM is awarded a total of $473,342.44.

**<u>END OF ORDER</u>**